# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2133 | **DATE** | 2/16/2001 |
| **CASE TITLE** | Jason Ianson, et al., v. Zion-Benton Township High School, et al., | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing[held/continued to] [set for/re-set for] on _____ set for 3/7/01 at 9:00.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]. Defendants' motion to dismiss is granted in part and denied in part
(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 20 2001 | |
| | Notified counsel by telephone. | | date docketed | 19 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | 01 FEB 16 PM 3:29 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JASON IANSON, a minor, by and through his )
guardians and next friends, RICHARD IANSON )
and DIANA IANSON, and JEREMY THOMPSON, )
a minor, by and through his guardian and next )
friend, JUDITH C. THOMPSON, )
)
                Plaintiffs, )
)
                v. )
ZION-BENTON TOWNSHIP HIGH SCHOOL, )
GARY M. FIELDS, Superintendent, as an agent )
of Zion-Benton township High School, DAVE )
LEMON, Computer Teacher, individually and as )
an agent of Zion-Benton township High School, )
MR. PORTMAN, Computer Teacher, individually )
and as an agent of Zion-Benton Township High )
School, ROBERT WORTHINGTON, Dean )
individually and as an agent of Zion-Benton )
Township High School, LEON MUFF, Dean )
individually and as an agent of Zion-Benton High )
School, TERRI EVANS, Security Personnel, )
individually and as an agent of Zion-Benton )
Township High School, and SANDRA D. )
GALGAN, Principal, individually and as an agent )
of Zion-Benton Township High School, )
)
                Defendants. )

**DOCKETED**
FEB 2 0 2001

No. 00 C 2133

Judge Gettleman

Magistrate Judge Bobrick

## INTRODUCTION

Plaintiffs Jason Ianson and Jeremy Thompson ("plaintiffs"), minors, through their guardians and next friends, Richard and Diana Ianson and Judith Thompson, respectively, bring this six count complaint pursuant to 42 U.S.C. § 1983 and state law against Zion-Benton Township High School, Superintendent, Gary M. Fields, teachers



1

Dave Lemon and Mr. Portman, Deans Robert Worthington, and Leon Muff, Terri Evans, Security Personnel, and Principal Sandra D. Galgan.

Count I alleges a civil rights claim arising under § 1983 against Zion-Benton Township High School, Gary M. Fields and the individual defendants for violations of the Fourth Amendment's proscription against unreasonable searches and seizures. Counts II and III allege civil rights claims arising under §1983 against defendants Zion Benton Township High School, Gary M. Fields, Robert Worthington, Sandra D. Galgan and Leon Muff for procedural and substantive violations of the Due Process Clause of the Fourteenth Amendment in connection with plaintiffs' suspension from school. Count IV alleges a state law claim for defamation against "the Defendants" for displaying a picture of plaintiffs on the entrance to the school accompanied by the statement "they are not allowed in the building." Count V alleges a state law claim for intentional infliction of emotional distress against "the Defendants" for the damages suffered by plaintiffs as a result of the underlying events. Count VI alleges a state law claim for assault against David Lemon for causing plaintiffs a reasonable apprehension of immediate harmful offensive contact.

Defendants have moved to dismiss all counts for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.Pro. 12(b)(6). For the reasons set forth below, defendants' motion is granted in part and denied in part.

## FACTS

For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. <u>Travel All Over the World, Inc. v. Kingdom of Saudi Arabia</u>, 73 F.3d 1423, 1428 (7th Cir. 1996).

According to the complaint, plaintiffs were students at Zion-Benton Township High School on April 8, 1999. On that day, plaintiffs were detained and questioned at school by Defendants David Lemon, Robert Worthington, Leon Muff and Terri Evans in connection with possibly pirated or pilfered school software and/or computer programs. Plaintiffs were then allegedly coerced into giving statements that implicated themselves and others in this theft. Later that day, defendant Terri Evans, the school security guard, accompanied plaintiffs to their respective homes, under the instruction of either Zion Benton High School, Gary M. Fields or Sandra D. Galgan. Terri Evans entered the plaintiffs' homes without a warrant and seized plaintiffs' personal computers and software.

On April 16, 1999, in connection with the above described software/computer program theft incident, plaintiffs were suspended from school for five days by the school's principal, defendant Galgan. Plaintiffs claim to have received, prior to the suspension, neither, notice of the charges against them, an explanation of the evidence against them, nor an opportunity to present their side of the story. Prior to the suspension, plaintiffs' parents had declined to attend a group meeting with parents of other students alleged to have stolen school software.

On April 26, 1999, Galgan suspended plaintiffs from school for an additional five days because plaintiffs' parents had refused to sign a "Dean's Contract" which implied that plaintiffs had stolen school property and stated that plaintiffs would not be allowed to participate in the Computer Tech Crew for the remainder of the 1999 school year. Plaintiffs claim that their parents did not receive a copy of the "Dean's Contract" until after the second suspension had been put into effect.

During the period of time that plaintiffs were suspended from school, "the Defendants" posted pictures of the plaintiffs at the entrance to the building that were accompanied by the statement "they are not allowed in the building."

## DISCUSSION

### Rule 12(b)(6) Standard

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir.1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief. See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429-30 (7th Cir.1996). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.1990).

## Claims Against Zion-Benton High School

A municipality may not be held liable under § 1983 on a theory of respondent superior. Jett v. Dallas Indep. School Dist., 491 U.S. 701, 735-36 (1989); City of Canton v. Harris, 489 U.S. 378, 385 (1989). Instead, a plaintiff must show that the deprivation of civil rights was caused by some official custom or policy of the municipality. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). The case law has identified three instances in which a municipality can violate a person's civil rights because of its policy: 1) an express policy, that, when followed, deprives a person of his or her constitutional rights; 2) a widespread practice that, though not authorized by an express policy or written law, "is so permanent and well- settled" as to constitute a "custom or usage" with the force of law; or 3) an allegation that the constitutional injury was caused by a person with "final policymaking authority." Baxter v. Vigo County School Corp., 26 F.3d 728, 734-35 (7th Cir.1994).

Plaintiff s have failed to allege that their civil rights were violated by an express policy or widespread custom of the school district. Further, plaintiffs' complaint fails to allege that any of the defendants was a final policymaker for purposes of imposing liability on the school. Instead, plaintiffs allege, in their supporting brief, that "the Defendants'" failure to consult with school attorneys, police or the School Board before they took the actions that they took in this incident simply leads to "the only logical conclusion [that] they operated as final policymakers." Plaintiffs have misunderstood the burden they must carry in alleging that a constitutional injury was caused by someone with "final policymaking authority."

5

Whether a particular public official has "final policymaking authority" is a question of state law. Jett v. Dallas Indep. School Dist., 491 U.S. 701, 737 (1989); Duda v. Board of Education of Franklin Park Public School Dist. No. 84, 133 F.3d 1054, 1061 (7th Cir. 1998). In Illinois, a School District's Board of Education has full power to manage the schools and to adopt all rules and regulations needed for that broad purpose. See 105 ILCS 5/10-20.5.[1] Plaintiffs have failed to allege that Zion-Benton Township High School's School District Board of Education delegated any "final policymaking authority" to any of "the Defendants" in this case. The plaintiffs' bare allegation that the absence of a written policy combined with the failure of "the Defendants" to consult with school attorneys, police or the School Board somehow turned "the Defendants" into final policymakers is insufficient to support a Monell claim. Absent any allegation that "the Defendants" acted with "final policymaking authority," Zion-Benton Township High School's motion to dismiss is granted.

Plaintiffs' claims against the individuals in their official capacities are redundant because suits against municipal agents in their official capacities are actually suits against the municipality. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Because plaintiffs have failed to allege a civil rights violation by Zion-Benton Township High School, the claims against the individual defendants in their official capacity as agents for Zion-Benton Township High School are also dismissed.

---

[1] The provision reads:
§ 10-20.5. Rules. To adopt and enforce all necessary rules for the management and government of the public schools of their district. Rules adopted by the school board shall be filed for public inspection in the administrative office of the district. 105 ILCS 5/10-20.5.

6

## Count I -- Fourth Amendment Violation

Plaintiffs claim that individual defendants Dave Lemon, Robert Worthington, Leon Muff and Terri Evans violated plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures when these defendants "detained Plaintiffs and immediately proceeded to interrogate them in connection with the possibility of pirated and/or pilfered school software and/or programs." This detention and interrogation occurred on school premises during normal school hours.

The Fourth Amendment, which protects individuals' liberty and privacy interests, principally applies in the context of law enforcement, preventing police from searching private areas without a warrant absent exigent circumstances, and from seizing suspected criminals unreasonably. See Ingraham v. Wright, 430 U.S. 651, 674 (1977) (noting "[t]he principal concern of the Fourth Amendment's prohibition against unreasonable searches and seizures is with intrusions on privacy in the course of criminal investigations").

The Supreme Court, however, has applied the Fourth Amendment's protection to searches of students by school administrators at public schools. New Jersey v. T.L.O., 469 U.S. 325 (1985). T.L.O. instructs that teachers and administrators must respect students' privacy interests, but that they may search students where it is reasonable to do so under the circumstances, a lower threshold of suspicion than is generally applicable to police work. Id. at 341.

The Court crafted its decision in T.L.O. around the role public schools play in furthering "publicly mandated educational and disciplinary policies." Id. at 336. The Court also recognized that "the preservation of order and a proper educational

environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult." Id. at 339.

Immediate, effective action is sometimes needed to deal with the frequent occurrence of events that call for discipline. Id. The diminished protection of the Fourth Amendment for public schoolchildren is proper, the Court reasoned, because classroom discipline and school order are crucial to effective education, and, moreover, the infusion of schools with drugs and the related escalation of violence make order and discipline all the harder to maintain. Id. at 339.

Although T.L.O. dealt only with searches, circuit courts have relied on it to find that seizures of students by teachers also come within the ambit of the Fourth Amendment. In Edwards v. Rees, the Tenth Circuit held that a vice principal's removal of a student from class and 20-minute interrogation of the student in order to determine whether the student had made a bomb threat did not violate the Fourth Amendment. Edwards v. Rees, 883 F.2d 882, 884 (1989). As in T.L.O., the reasonableness of the vice principal's actions was examined in light of the special relationship between teachers and students. Id.

In the instant case, plaintiffs claim they were seized and interrogated "in connection with the possibility of pirated and/or pilfered school software and/or programs." In light of the special relationship between teachers and students, the diminished protection of the Fourth Amendment for public schoolchildren and need to maintain discipline and order in the schools, the individuals' actions in detaining and interrogating plaintiffs was reasonable. Accordingly, individual defendants Dave Lemon,

8

Robert Worthington, Leon Muff and Terri Evans' motion to dismiss this part of Count I is granted.

Plaintiffs further allege that individual defendant Terri Evans violated their Fourth Amendment right to be free from unreasonable searches and seizures when Evans, without a warrant, accompanied plaintiffs to their respective homes, entered each home and seized their personal computers. Defendants argue that the protection from Fourth Amendment claims laid out in T.L.O. should apply to this situation. Defendants have cited no cases that extend the protections of T.L.O. beyond the walls of the school. In light of the fact that the opinion in T.L.O. turned on the need for "maintaining security and order in the schools," this court declines defendant's invitation to extend the protection of T.L.O. out from the schoolyard and into the home.

Defendants next argue that even if Evans violated plaintiffs' Fourth Amendment rights, Evans is entitled to qualified immunity for the plaintiffs' federal claims. The defense of qualified immunity protects government agents "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Erwin v. Daley, 92 F.3d 521, 523 (7th Cir.1996). Thus, a defendant is immune from suit if the conduct at issue did not violate a right that was clearly established when the conduct occurred, so that the defendant would not have been on notice that his behavior was "probably unlawful." Montville v. Lewis, 87 F.3d 900, 902-03 (7th Cir.1996). Once a defendant has raised the defense of qualified immunity, the plaintiff bears the burden of showing that the right he or she is asserting was clearly established at the relevant time. Clash v. Beatty, 77 F.3d 1045,

1047 (7th Cir.1996); Rice v. Burks, 999 F.2d 1172, 1174 (7th Cir. 1993); Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir. 1987).

At the core of the Fourth Amendment, whether in the context of a search or an arrest, is the fundamental concept that any governmental intrusion into an individual's home or expectation of privacy must be strictly circumscribed. Payton v. New York, 445 U.S. 573, 582 (1980) (citations omitted). The Fourth Amendment protects the individual's privacy in a variety of settings. Id. at 590. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home--a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated." Id. That language unequivocally establishes the proposition that, "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Id. (quoting Silverman v. United States, 365 U.S. 505, 511). The Fourth Amendment has drawn a firm line at the entrance to the house. Id.

The fact that plaintiffs are schoolchildren does not make the line drawn at the entrance to the house any less firm. Plaintiffs' right to be free from a warrantless search of their homes was clearly established at the time defendant Evans entered those homes, without a warrant, and removed their computers. As a trained school security guard, it would be unreasonable for Evans to believe she had powers that exceeded even those of the police. Therefore, defendant Evans is not entitled to qualified immunity. Accordingly, defendant Evans' motion to dismiss this part of Count I is denied.

**Counts II and III – Violation of the Fourteenth Amendment's Due Process Clause**

Counts II and III of the plaintiffs' complaint alleges that individual defendants Sandra D. Galgan, Robert Worthington and Leon Muff combined to deprive plaintiffs due process of the law when they: suspended plaintiffs from school without probable cause for five days; suspended plaintiffs from school for an additional five days when plaintiffs' parents refused to sign a "Dean's Contract"; and ignored plaintiffs repeated requests to obtain make up homework, resulting in the plaintiffs receiving low grades.

In Goss v. Lopez, 419 U.S. 565 (1975), the Supreme Court determined that procedural due process was required when a student faced a ten-day scholastic suspension, and described the procedures that must be afforded a student whose suspension may result in deprivation of liberty or property within the meaning of the Fourteenth Amendment. After balancing the competing interests involved, the Court decided that before a suspension is imposed, the student must be given "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." Id. at 581.

Although plaintiffs' complaint is not as clear as it could be, plaintiffs have alleged that they were not given notice of the charges against them, not provided an explanation of the evidence against them until after the suspensions, and were not afforded an opportunity to present their side of the story. Plaintiffs further allege that defendant violated their substantive due process rights because defendants' conduct "shocks the conscience" or encroaches upon a fundamental right or privilege "implicit in the concept of ordered liberty." See Zinermon v. Burch, 494 U.S. 113, 125 (1990); Hilton v. Lincoln-Way High School, No. 97 C 3872, 1998 WL 26174 (N.D. Ill.) These allegations

11

are sufficient to withstand defendants' motion to dismiss. Accordingly, defendants' motion to dismiss Counts II and III is denied.

### Count IV– State Law Defamation Claim

Plaintiffs have alleged that "the Defendants'" act of posting pictures of the plaintiffs at the school entrances accompanied with a sign stating, "they are not allowed in the building," was defamatory because it caused third parties (students, administrators and those entering the building) to conclude that the plaintiffs were guilty of some criminal act. Plaintiffs claim "their reputations were damaged as they were confronted and questioned by their peers concerning the publication of said photographs," and "[plaintiffs] were extremely embarrassed and humiliated by Defendants' careless and reckless actions." Plaintiffs further claim that, "[a]s a direct and proximate result [of the defendants' actions], the Plaintiffs were humiliated, embarrassed, scandalized, ashamed and shunned by their peers." Nowhere in the complaint do plaintiffs identify the defendants against whom they are bringing this count.

Liability for defamation exists where there is: a false and defamatory statement concerning another, an unprivileged publication of that statement to a third party, fault amounting at least to negligence on the part of the publisher, and either actionability of the statement irrespective of special damages or the existence of special damages caused by the publication. Restatement (Second) of Torts §558 (1977); Krasinski v. United Parcel Service, Inc., 124 Ill.2d 483, 490 (1988). Defamatory statements may be actionable *per se* or actionable *per quo*. Schaffer v. Zekman, 196 Ill.App.3d 727, 731 (1st Dist. 1990). A publication is defamatory *per se* if the defamatory character of the statement is apparent on its face and extrinsic facts are not necessary to explain it.

12

Brown & Williamson Tobacco Corp. v. Jacobson, 713 F.2d 262, 267 (7th Cir. 1983). A publication defamatory *per se* is "so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary." Owen v. Carr, 113 Ill.2d 273, 277 (1986). Statements are actionable *per quo* if they necessitate extrinsic facts or innuendo to explain their defamatory meaning. Heerey v. Berke, 188 Ill.App.3d 527, 532 (1st Dist. 1989). A claim for defamation *per quo* requires evidence demonstrating, as a matter of fact, that some special damage resulted to the aggrieved person from the use of the statement. Id.

One who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true. Restatement (Second) of Torts § 581A (1977); Sivulich v. Howard Publications, Inc., 126 Ill.App.3d 129, 131 (1st Dist. 1984). In the instant case, the statement, "they are not allowed in the building," was true. Plaintiffs had been suspended from school and in fact were not allowed to be in the school building. Plaintiffs have not alleged that "the Defendants" falsely told anyone that plaintiffs committed a criminal act. Rather, plaintiffs have alleged that persons who saw the statement have interpreted it to mean that plaintiffs committed a criminal act. This interpretation, while perhaps understandable, cannot be the basis of liability in a defamation *per se* action. The words spoken were true. See Harte v. Chicago Council of Lawyers, 220 Ill.App.3d 255, 260 (1st Dist. 1991) (statements are actionable *per quo* and not per se if they necessitate innuendo to explain their defamatory meaning and require evidence demonstrating that substantial injury resulted to plaintiff from their use). Because a false statement – an essential element of the defamation claim – is missing, plaintiffs have failed properly to allege an actionable claim.

13

Even if the statement, "they are not allowed in the building," was not true, plaintiffs have still not alleged a proper defamation *per quo* claim. It is well settled that, in order to prevail on a claim for defamation *per quo*, a plaintiff must allege special damages with particularity. Barry Harlem Corp. v. Kraff, 273 Ill.App.3d 388, 394 (1st Dist.1995). General allegations such as damage to one's health or reputation, economic loss, and emotional distress are insufficient to state a cause of action for defamation *per quo*. Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc., 190 Ill.App.3d 524, 530 (2nd Dist.1989); Heerey, 188 Ill.App.3d at 532-33. Here, plaintiffs have failed to allege special damages. Plaintiffs' allegations that they were "humiliated, embarrassed, scandalized, ashamed and shunned by their peers" are insufficient to support an action for defamation *per quo*.

Accordingly, for the reasons set forth above, defendants' motion to dismiss Count IV is granted.

### Count V – State Law Claim for Intentional Infliction of Emotional Distress

Plaintiffs allege that as a direct result of the defendants' "extreme and outrageous" conduct in "ravaging their homes" and recklessly "failing to seek police advice or assistance," plaintiffs have suffered "severe emotional stress and mental anguish" and have become "radically apprehensive, suspicious, and untrusting of school personnel." Plaintiff Jason Ianson further claims that his medical condition, mastocytosis, has been exacerbated by emotional distress.

Under Illinois law, the tort of intentional infliction of emotional distress requires the following elements: (1) extreme and outrageous conduct; (2) intent to cause, or a reckless disregard of the probability of causing, emotional distress; (3) severe or extreme

emotional distress suffered by the plaintiff; (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct. See Public Finance Corp. v. Davis, 66 Ill.2d 85, 89-90 (1976). Illinois courts have consistently held that the conduct must be particularly egregious. "It has not been enough that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found [only when the conduct] is so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency." Id. at 89-90.

The conduct alleged of Evans is not of such an extreme and outrageous nature as to constitute a basis for recovery under the theory alleged. Even if Evans had acted with a tortuous intent or an intent to inflict emotional distress, such conduct would not be enough to be characterized as extreme and outrageous when imposed on a person of "ordinary sensibilities." Knierim v. Izzo, 22 Ill.2d 73, 86 (1961). Plaintiff alleges a single incident in which Evans entered their homes without a warrant and removed their computers. While certainly a possible Fourth Amendment violation, such conduct is not enough to support a cause of action for intentional infliction of emotional distress. A single isolated incident is not extreme and outrageous conduct. Morrison v. Sandell, 112 Ill.App.3d 1057, 1060 (4th Dist.1983).

Accordingly, defendants' motion to dismiss Count V is granted.

## Count VI – State Law Claim for Assault

Plaintiffs have alleged that defendant Lemon intentionally created a reasonable apprehension of immediate harmful contact in plaintiff Jason Ianson when he "confronted and threatened" Ianson. Plaintiffs allege that as a direct and proximate result of Lemon's threat of great bodily harm, plaintiff Ianson's medical condition, mastocytosis, has been exacerbated.

For civil liability, an assault constitutes "an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." Yang v. Hardin, 37 F.3d 282, 286 (N.D. Ill. 1994); Parrish by Bowker v. Donahue, 110 Ill.App.3d 1081,1083 (3rd Dist.1982).

Plaintiffs have alleged that Lemon intentionally threatened plaintiff Jason Ianson and caused him to be put in a reasonable apprehension of an imminent battery. Accordingly, plaintiffs have properly alleged that Lemon assaulted Jason Ianson.

Defendants argue, however, that Lemon is entitled to immunity under the Local Governmental and Governmental Employees Tort Immunity Act. 745 ILCS 10/1-101 et seq (1993). The Act provides in relevant part, "[E]xcept as otherwise provided by statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (1993). Immunity, however, does not extend to: (1) public employee's acts based on corrupt or malicious motives, or (2) public employee's wilful and wanton acts. Munizza v. City of Chicago, 222 Ill.App.3d 50 (1st Dist.1991). Wilful

16

and wanton conduct involves an element of intent or recklessness. <u>Anderson v. Village of Forest Park</u>, 238 Ill.App.3d 83, 94 (1st Dist.1992). Because assault is by its nature an intentional tort, Lemon is not entitled to immunity under §2-201. Accordingly, defendants' motion to dismiss Count VI is denied

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted in part and denied in part:

1. All federal claims against Zion-Benton High School and the individual defendants in their official capacities are dismissed;

2. Counts I, except as to the individual Fourth Amendment claim against Evans, IV and V are dismissed:

3. The motion is denied as to Counts II, III, and VI.

This matter is set for a report on status on March 7, 2001 at 9:00 a.m.

**ENTER:    February 16, 2001**

_____
**Robert W. Gettleman**
**United States District Judge**